IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, )<br>)<br>Plaintiff, )<br>)<br>and PAMELA PERRY )<br>)<br>Plaintiff in Intervention )<br>)<br>v. )<br>)<br>COMPREHENSIVE BEHAVIORAL )<br>HEALTH CENTER OF ST. CLAIR )<br>COUNTY, INC., )<br>)<br>Defendant. ) | Case No. 3:12-cv-01031-WDS-SCW<br><br>JURY TRIAL DEMANDED |

## COMPLAINT IN INTERVENTION

Plaintiff in Intervention, Pamela Perry, brings this Complaint in Intervention by and through her attorneys, Thomas E. Kennedy, III, and The Law Offices of Thomas E. Kennedy, III, L.C., and pursuant to Rule 24(a) of the Federal Rules of Civil Procedure and states and alleges the following for her cause against Defendant, Comprehensive Behavioral Health Center of St. Clair County, Inc..

### I.    Jurisdiction and Venue

1.    Jurisdiction of the Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345 and 42 U.S.C. § 1983, as the plaintiff's claims allege violations of federal law. Additionally, 42 U.S.C. §§ 2201 and 2202 provide a jurisdictional basis for seeking declaratory relief for the foregoing violations.

2.    This case arises and is authorized under Section 107(a) of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §12117(a), which incorporates by reference Section

1

706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §2000e-5(f)(1) and (3).

3. Supplemental jurisdiction arises under 28 U.S.C.S. § 1367(c)(3).

4. The unlawful employment actions alleged in this action were committed within the jurisdiction of United States District Court for the Southern District of Illinois.

## II. Parties

5. The Equal Employment Opportunity Commission (the "EEOC") is the agency of the United State of America charged with the administration, interpretation, and enforcement of Titles I and V of the ADA and is expressly authorized to bring this action under Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference sections 706(f)(1) and (3) of Title VII, 42 U.S.C. §§ 2000e-5(f)(1) and (3).

6. Pamela Perry ("Perry") is a woman who at all relevant times was a citizen and resident of the State of Illinois.

7. At all relevant times, the defendant has continuously been an Illinois Corporation doing business in the State of Illinois and the City of East St. Louis, and has continuously had at least 15 employees.

8. At all relevant times, the defendant employer has continuously been an employer engaged in an industry affecting commerce under Section 101(5) of the ADA, 42 U.S.C. § 12111(5), and Section 101(7) of the ADA, 42 U.S.C. § 12111(7), which incorporates by reference Sections 701(g) and (h) of Title VII, 42 U.S.C. §§ 2000e(g) and (h).

9. At all relevant times, defendant employer has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2) and a recipient of federal funds under the Rehabilitation Act, 29 U.S.C. § 794.

### III. Exhaustion of Remedies

10. Perry timely filed with the EEOC a Charge of Discrimination alleging violations of Title VII against Defendant (attached as Exhibit A).

11. After an unsuccessful attempt at conciliation, the EEOC initiated this action.

12. All private, administrative and judicial prerequisites to the institution of this action have been fulfilled.

### IV. Statement of the Case

13. Perry was employed by the defendant, Comprehensive Behavioral Health (CBH) for twenty-three years, working with individuals with developmental disabilities and mental illness, first as a therapeutic aide in its department of Community Support Services (CSS) and then as a Rehabilitation Support Associate (RSA) in CSS and in Psycho Social Rehabilitation (PSR). Her job was to counsel persons with mental illness and to help them continue living independently in the community. Her job duties included leading group sessions to teach independent living skills and submitting billing reports and group notes to her supervisor on a regular basis.

14. Perry was diagnosed in 2002 with multiple sclerosis. She experienced pain at first in her feet and later in her hands and also a difficulty concentrating under very loud or chaotic circumstances.

15. In June 2002, she provided documentation from her doctor to the Assistant Executive Director at CBH, Mary Jackson, and requested an accommodation in order to wear athletic shoes to work. The defendant granted the request and Perry wore her athletic shoes for the next eight years without any adverse affect on her job performance.

16. Perry received performance ratings of very good or better on performance

appraisals and met standards on all clinical competency evaluations until September 2009.

17.     In September 2009 the defendant assigned a new supervisor to Perry, Kasha Penny ("Penny").

18.     Perry continued to wear her athletic shoes to work under the new supervisor. Perry also began to experience pain and cramping in her hands and difficulty concentrating under chaotic conditions.  Her office was located off of a noisy hallway near the main gathering space where support groups met and clients and members of the public congregated.  It was always very congested and very loud.  In addition, music was piped into her office and she was prohibited from closing the door.

19.     At the end of each day, Perry was to submit a handwritten report on each client she saw that day.  She saw between 15 and 30 clients each day.  As her disability progressed, it became more painful to write and she had a difficult time completing all of the reports each day.

20.     Penny issued a written warning to Perry on or about February 25, 2010 for not turning in billing reports and group notes on a daily basis.

21.     On or about March 2, 2010 Perry received a Written Warning for Violation for Agency Policy for wearing athletic shoes to work even though Penny was aware of Perry's disability and the fact that Perry had been wearing the same shoes for eight years at the same job while earning positive marks on her evaluations.

22.     On or about March 13, 2010 and again on or about April 30, 2010, Perry requested in writing reasonable accommodations to help her perform her job duties.  She requested that she be allowed to continue wearing athletic shoes.  She explained that she had tried several different shoes and she was unable to find another shoe that prevented the cramping and pain as effectively as the athletic shoes.  She also sought a quiet area in which to work on her

reports because the distractions of the work area exacerbated her disability, making it difficult to concentrate and complete her reports on time. Perry listed several options for the defendant's consideration that would help her complete her work, including noise canceling headphones, uncompensated time after work or on the weekends to complete the reports when the office was quiet, and the use of common and inexpensive dictation software.

23. Perry's treating physician submitted a letter on May 25, 2010 explaining the need for athletic shoes, "software designed for verbal transcription," and a quiet location in which to work.

24. On or about June 30, 2010 the defendant denied all of her requests with the exception of providing a quiet office space in which she could complete her reports.

25. Within approximately two weeks from the date the defendant provided the quiet office space, it returned Perry to her previous work environment, where she faced all of the same loud and distracting conditions as before. No other accommodations were provided. Instead, Perry was required to wear painful dress shoes and work in noisy areas where she was prohibited from doing anything to minimize distractions. The defendants continued to require Perry to handwrite her reports without the use of readily available dictation software. Perry experienced severe and needless pain from being forced to wear the dress shoes and handwrite her reports.

26. Perry's accommodation requests were not costly nor were the costs clearly disproportionate to the benefits. Her requests would not have resulted in the elimination or change of essential job functions, assignment of essential job functions to other employees, or lower productivity standards. Perry's requests did not impose an undue hardship on the defendant.

27. Perry continued to struggle to complete the 15-30 reports she was required to

handwrite by the end of each day because of the severe pain in her hands and the lack of any accommodations.

28. On or about August 31, 2010 the defendant notified Perry by letter that she was to be laid off effective September 10, 2010 and she could apply for a therapeutic aide position in the residential services department.

29. Perry interviewed for the position of therapeutic aide on or about September 10, 2012.

30. Perry was qualified for the position of therapeutic aide.  She had ten years experience in this position, the proper training and education, and could carry out the essential functions of the job with the reasonable accommodations of permission to wear athletic shoes, a quiet environment to complete reports, and dictation software.

31. The defendant did not hire Perry.  Instead, it hired a close relative to the director, who had less experience and was not disabled.

32. The defendant did not make a reasonable accommodation nor assign Perry to a vacant position for which she was qualified.

33. There was no threat of risk to the plaintiff, the defendant, or the defendant's employees in granting the plaintiff's requests for reasonable accommodations.  However, the lack of accommodations resulted in Perry's needless suffering.

34. The defendant's actions were intentional.

35. The defendant, by its actions described above, engaged in discriminatory conduct with malice or reckless indifference to the plaintiff's federally protected rights.

36. As a result of the defendant's actions, the plaintiff has suffered a loss of employment; compensation; fringe benefits and other rights, privileges and conditions of her

employment; pain and suffering; loss of enjoyment of life; damage to her reputation; and emotional distress.

## V.

## COUNT I

**Unlawful discrimination in violation of Title I of the ADA, 42 U.S.C. § 12112** *et seq.*

37. The plaintiff realleges paragraphs 1 through 36 and incorporates them herein by reference.

38. The plaintiff has a physical impairment that substantially limits the major life activities of walking, concentrating, and manipulating objects with her hands.

39. The defendant discriminated against the plaintiff, a person with a disability who was qualified to perform the jobs of therapeutic aide and RSA, when it terminated her employment because of her disability.

40. The defendant discriminated against the plaintiff, a person with a disability who was qualified to perform the jobs of therapeutic aide and RSA, when, with the knowledge of the plaintiff's disability and following the plaintiff's request for an accommodation, it denied the plaintiff a reasonable accommodation.

## COUNT II

**Violation of the Illinois Human Rights Act**

**775CS 5/2-101 et seq.**

41. The plaintiff realleges paragraphs 1 through 40 and incorporates them herein by reference.

42. The defendant engaged in unlawful discrimination under the Illinois Human Rights Act by discharging the plaintiff from employment and refusing to hire her based on her disability.

## COUNT III

### Violation of Section 504 of the Rehabilitation Act

### 29 U.S.C. §794

43. The plaintiff realleges paragraphs 1 through 42 and incorporates them herein by reference.

44. The defendant is a recipient of federal funds.

45. The plaintiff is disabled and otherwise qualified for the position of therapeutic aide.

46. The plaintiff suffered an adverse employment action when the defendant terminated her position and refused to hire her for the available position of therapeutic aide and hired a less qualified person.

## VI. Prayer for Relief

Wherefore, the plaintiff/intervenor Pamela Perry respectfully prays that this Court:

A. Declare that the defendant's conduct unlawfully discriminated against the plaintiff and violated the ADA, Section 505, and the Illinois Human Rights Act;

B. Award the plaintiff such damages as would fully compensate her for her injuries caused by the defendant's actions;

C. Award the plaintiff her costs, expenses, and reasonable attorney's fees, as permitted by 42 U.S.C. §12117, for this action;

D. Award punitive damages for the intentional and callous conduct of the defendant; and

E. Grant any additional relief as the Court deems just and proper.

*Jury Demand*

Pursuant to Rule 28 of the Federal Rules of Civil Procedure, Plaintiff Pamela Perry respectfully demands a trial by jury on all issues triable by a jury.

               Law Offices of Thomas E. Kennedy, III, L.C.

              By:*/s/ Thomas E. Kennedy, III*
                One of the Intervenor's Attorneys

Thomas E. Kennedy, III, #01445960
Heather B. Navarro, #6298592
Roshni C. Shikari, #6310168
906 Olive St., Ste. 200
St. Louis, MO 63101
(314) 872-9041
(314) 872-9043 fax
tkennedy@tkennedylaw.com

CERTIFICATE OF SERVICE

The undersigned attorney certifies that a copy of the foregoing Complaint in Intervention as Plaintiff was served by operation of the Court's electronic filing system on January 2, 2013 on the following parties:

Melvin D. Kennedy, Esq.
Equal Employment Opportunity Commission
1222 Spruce St., Rm. 8.100
St. Louis, MO
MELVIN.KENNEDY@EEOC.GOV

Heidi Eckert
Hinshaw & Culbertson
521 West Main Street, Ste. 300
P.O. Box 509
Belleville, IL 62222-0509
heckert@hinshawlaw.com

               /s/ *Thomas E. Kennedy, III*
                Thomas E. Kennedy, III